UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HELEN CARSON WATKINS,

    Plaintiff,

v.                                          Case No. 8:19-cv-2705-T-AEP

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

**I.**

**A.  Procedural Background**

Plaintiff filed an application for a period of disability and DIB (Tr. 181-82). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 75-103, 107, 112-16). Plaintiff then requested an administrative hearing (Tr. 117-18). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 34-74). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly

denied Plaintiff's claims for benefits (Tr. 12-33).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 177-80).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. § 405(g).

    **B.**    **Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1956, claimed disability beginning February 17, 2015 (Tr. 181).  Plaintiff completed two years of college (Tr. 218).  Plaintiff's past relevant work experience included work as a telephone customer service representative and a certified nurse's assistant (Tr. 60-61, 204-14, 218-19).  Plaintiff alleged disability due to kidney failure, uncontrolled hypertension, congestive heart failure, gout, dyspnea, and gastroenteritis (Tr. 217).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through September 30, 2019 and had not engaged in substantial gainful activity since February 17, 2015, the alleged onset date (Tr. 17). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: chronic heart failure; hypertension; gastritis; hypertensive kidney disease; chronic kidney disease; arthritis of right hand; stenosing tenosynovitis of finger, right hand; carpal tunnel syndrome; radiculopathy, lumbar region; radiculopathy, thoracic region; cervical strain; multilevel degenerative changes; gout; hyperlipidemia; osteoarthritis of right knee; peripheral neuropathy; polyarthritis; restrictive lung disease; strain of right trapezius muscle; and obesity (Tr. 18). Notwithstanding the noted impairments, the

ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, except that Plaintiff could occasionally stoop, crouch, kneel, and crawl; could occasionally climb stairs and ramps but could not climb ladders, ropes, or scaffolds; and could frequently handle and finger bilaterally (Tr. 20-21). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 21). Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could perform her past relevant work as a customer service representative (Tr. 26). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 26).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (citation omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

### III.

Plaintiff argues that the ALJ erred in five separate ways. Namely, Plaintiff contends that the ALJ erred by (1) failing to properly consider Plaintiff's subjective complaints; (2) failing to properly consider medication side effects; (3) failing to properly consider medical opinions; (4) improperly concluding that Plaintiff retained the RFC to perform a reduced range of light work; and (5) failing to appropriately consider the VE testimony. For the following reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence.

#### A.  RFC

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ

considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3); SSR 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). In rendering the RFC determination in this instance, Plaintiff contends that the ALJ erred in considering Plaintiff's subjective complaints, medication side effects, and the opinions of her treating and examining medical practitioners.

### i. Subjective Complaints

In addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. § 404.1529. To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical

condition can reasonably be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see* 20 C.F.R. § 404.1529. When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225 (citation omitted). A reviewing court will not disturb a clearly articulated credibility finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (*per curiam*) (citation omitted).

In this instance, despite finding that Plaintiff had 20 severe impairments, the ALJ concluded that Plaintiff's subjective complaints regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record and, more specifically, did not find support in the record because Plaintiff failed to express ongoing complaints of her symptoms to the degree alleged while receiving generally conservative and sporadic treatment during the period at issue (Tr. 18, 21-22). Although the ALJ thoroughly considered the evidence of record in making that finding, the ALJ failed to appropriately consider Plaintiff's ability to afford proper medical treatment and whether the conservative and sporadic nature of her treatment stemmed from her inability to afford regular or more aggressive treatment. As the ALJ repeatedly pointed to the conservative treatment and lack of ongoing treatment or complaints, such failure is significant in this instance and warrants remand.

A well-established principle in the Eleventh Circuit is that poverty excuses non-compliance.[1] *Dawkins v. Bowen*, 848 F.2d 1211, 1213-14 (11th Cir. 1988). During the administrative hearing, Plaintiff repeatedly indicated that she could not obtain treatment due to a lack of ability to pay (Tr. 43-44, 48, 49, 51-52). For example, she indicated that she did not know what stage of kidney failure she currently was in because her medical bills added up to the point that she had been refused medical treatment and regular doctors' appointments as a result of her inability to pay her medical bills (Tr. 43-44). She also stated that she needed to see someone about her stomach because she could not eat and continued to vomit constantly but that, when she tried to make an appointment, they brought up her outstanding bill, and she could therefore not obtain the help she needed (Tr. 49, 51). Plaintiff further stated that she could not read without glasses and, in fact, needed to use a magnifying glass to read, but she could not get glasses because she could not afford to obtain proper treatment (Tr. 48). Notably, Plaintiff's representative requested a consultative examination on that very issue, given Plaintiff's inability to pay for or receive treatment (Tr. 48, 299), but the ALJ denied Plaintiff's request, stating:

> Prior to the hearing, the claimant's representative requested an ophthalmologic consultative examination. He stated the claimant complained of blurred vision due to glaucoma and had not been able to pursue treatment due to limited income and lack of insurance.

---

[1] Some notations appear in the record regarding Plaintiff's noncompliance with her medication regimen leading to health issues (*see, e.g.,* Tr. 658). As the record does not make clear the reason for the noncompliance, and given the repeated references to an inability to pay or to receive treatment due to outstanding medical bills, the issue of whether Plaintiff's poverty caused her noncompliance is a matter best resolved by the ALJ.

> However, the claimant had extensive treatment in the period at issue, with numerous evaluations that included examinations of her eyes and no relevant visual diagnoses. Moreover, the claimant reported she continued to drive and while she complained of visual symptoms in April 2017, she did not report glaucoma, she denied blurry vision in 2017, and she denied blurry vision again more recently, in June 2018 and September 2018. Given the voluminous record, with no diagnosis of a visual impairment, and the lack of more significant ongoing complaints, the undersigned denies the request for an ophthalmologic consultative examination.

(Tr. 15) (internal citations omitted).

A large portion of the "voluminous record" referred to by the ALJ in denying that request consists of treatment notes from hospital visits rather than treatment notes from medical practitioners (Tr. 305-844). The need to seek medical attention at a hospital rather than from a medical practitioner makes sense in light of the fact that Plaintiff's medical practitioners refused treatment based on her outstanding medical bills. Beyond such refusal by medical practitioners to provide treatment based on outstanding medical bills, Plaintiff also indicated, prior to the administrative hearing, that she had to cease treatment due to an inability to pay. Namely, treatment notes from Dr. Saqib Khan in September 2018 confirm that Plaintiff ceased treatment for her neck, back, shoulder, arm, hip, and hand pain, including cortisone injections, medications, and physical therapy, because she could not pay for it (Tr. 805). Given the ALJ's repeated reliance upon Plaintiff's conservative and sporadic treatment without ongoing complaints (Tr. 15-26), it is necessary for the ALJ to determine whether the cause of such gaps in treatment or complaints stem from an inability to afford and receive proper medical treatment.

Resolution of the issue is important for a couple reasons. As a primary example, the ALJ addressed Plaintiff's failure to obtain treatment for her visual impairment and denied the request for a consultative examination (Tr. 15, 48, 299). Plaintiff essentially testified that she was far-sighted and could not see up close, thus requiring the need for a magnifying glass (Tr. 48). When posing a hypothetical to the VE incorporating a limitation for a person who could not perform jobs requiring the person to read fine print, the VE opined that such individual could not perform Plaintiff's past relevant work as a customer service representative (Tr. 65-66). Should a consultative examination indicate that Plaintiff cannot see up close and requires visual limitations to perform work, the ALJ's findings as to Plaintiff's ability to perform her past relevant work would likely be affected, especially in light of the fact that the ALJ found Plaintiff not disabled based on the VE's testimony that Plaintiff could perform her past relevant work as a customer service representative.

Furthermore, as the ALJ concluded, Plaintiff suffers from at least 20 severe impairments, including chronic heart failure, hypertension, and chronic renal failure, and, during the period post-dating her alleged disability onset, was involved in two automobile collisions and, at any given moment, took anywhere from seven to 10 medications, several of which related to her elevated blood pressure. On several occasions, she arrived at the hospital with severe symptoms, such as severely elevated blood pressure, vomiting blood, nausea, and diarrhea, stemming from or relating to her hypertension, renal failure, and stomach issues, to name a few.

Though her issues tended to resolve by discharge, there was no indication that Plaintiff was malingering or otherwise not presenting with valid complaints.

She also sought medical treatment after her automobile collisions, with at least one medical practitioner finding that her symptoms found support in the medical record. Notably, Dr. Jonathan Hall conducted a neurosurgical consultation in April 2017 following Plaintiff's automobile collision in January 2017 (Tr. 837-38). Dr. Hall noted that Plaintiff had "been battling a constellation of symptoms that includes significant neck and back pain with the former being her bigger concern" (Tr. 837). Upon review of Plaintiff's MRIs and a physical examination of Plaintiff, Dr. Hall concluded that Plaintiff's "imaging studies have uncovered compelling explanations of her symptom[s]" (Tr. 506-09, 838). Though chiropractic care initially seemed to prove effective in assisting Plaintiff with chronic pain in the neck, back, and shoulder, Plaintiff's condition became worse due to acute flare-ups, leaving her prognosis fair, with the possibility of periods of exacerbation and risk of future aggravation or trauma along with reduced functional capacity (Tr. 811-35). As indicated above, Plaintiff subsequently ceased treatment for her neck, back, shoulder, arm, hip, and hand pain – following her second accident in a two-year period – because she could not pay for it (Tr. 805).

Given this record, therefore, the ALJ should consider Plaintiff's ability to afford treatment and the effect her inability to afford treatment had on her ability to obtain more consistent and aggressive treatment or, quite frankly, treatment in general. Further, to the extent that any gaps appear in the record, such as with

respect to the existence of a visual impairment or the side effects of Plaintiff's medication, the ALJ should obtain a consultative examination. Upon remand, to the extent necessary, the ALJ shall incorporate any further limitations into hypotheticals posed to the VE to account for Plaintiff's credible subjective complaints, medication side effects, or other limitations affecting Plaintiff's ability to perform work.[2]

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

2. The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 23rd day of March, 2021.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record

---

[2] Plaintiff's argument regarding the improper consideration of the medical opinions lacks merit and thus is not addressed further herein.